IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID KEITH ROACH, II,**

    **Plaintiff,**

vs.

    **Civil Action 2:16-cv-1085**
    **Chief Judge Edmund A. Sargus, Jr.**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, David Keith Roach, II, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the Chief United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff applied for supplemental security income in May 2013 asserting disability from congestive heart failure and blood clots with an onset date of December 1, 2012. (R. at 126.) Plaintiff's claim was denied initially and upon reconsideration. Upon request, a hearing was held September 15, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 39-

82.) A vocational expert also appeared and testified at the hearing. (R. at 76-82.) On November 23, 2015, ALJ Irma J. Flottman issued a decision finding that Plaintiff was not disabled at any time from April 22, 2013, the date the application was filed. (R. at 16-34.) On September 22, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the September 2015 administrative hearing, Plaintiff testified that he is forty-five years old and lives with his parents. (R. at 46.) Plaintiff stated that, between April 2013 and September 2015, he gained and lost approximately sixty pounds. (R. at 47.) Plaintiff also stated that he is a high school graduate and has a driver's license. (*Id.*)

Plaintiff testified that he contracted a virus in December 2012. (R. at 54.) Plaintiff further testified that in February 2013, the virus began attacking his internal organs. (*Id.*) Plaintiff stated that, on March 3, 2013, he was hospitalized with congestive heart failure, pneumonia, blood clots in his heart and lungs, and problems with his liver and kidneys. (*Id.*) Plaintiff testified that he was hospitalized again in April 2013. (*Id.*) Plaintiff also testified that, after a medical test on April 10, 2013, he went into cardiac arrest, received CPR, and was on life support for approximately a week. (R. at 55.) According to Plaintiff, he was too weak to undergo necessary surgery to insert a defibrillator. (*Id.*)

Plaintiff testified that he suffers from fluid retention and takes a diuretic daily. (R. at 56.) Plaintiff stated that he is restricted to two liters of fluid intake per day. (R. at 72.) Plaintiff also testified that he suffers from shortness of breath and chest pains and that he carries and uses nitroglycerin tablets "quite often." (R. at 56.) According to Plaintiff, he takes up to twenty-five

2

nitroglycerin tablets per month. (R. at 72.) Plaintiff stated that his chest pains are easily triggered by physical activity or simple anxiety. (R. at 56.) Plaintiff testified that he takes lisinopril, carvedilol, and warfarin. (*Id.*) According to Plaintiff, his blood clots are now controlled by the medication.

Plaintiff testified that he does not walk much, "just normal trips around the house . . . maybe . . . walk outside to the patio." (R. at 63.) Plaintiff also testified that he cannot climb stairs without taking a break. (R. at 65.) Plaintiff opined that he could not walk a block and that he could not be on his feet long without needing to sit down and take a break." (R. at 63.) Plaintiff testified that he cannot stand for thirty minutes and cannot sit at a desk longer than twenty or thirty minutes. (R. at 64.) According to Plaintiff, he lies down approximately three times a day from thirty minutes to three hours at a time. (*Id.*) Plaintiff stated that he cannot lay flat on his back because his lungs fill with fluid. (*Id.*)

Plaintiff testified that he does not help with household chores. (R. at 64.) According to Plaintiff, he does "[a]s little as possible." (R. at 66.) Plaintiff stated that he does not read, but he does watch television and drives. (R. at 66, 70.) Plaintiff also stated that he does not socialize. (R. at 67.) Plaintiff testified that he suffers from anxiety and panic attacks that cause accelerated heartrate, elevated blood pressure, tightness of the jaw and neck, and numbness in his arm. (R. at 68.) Plaintiff also testified that he experiences "extreme rage." (*Id.*)

**B. Vocational Expert Testimony**

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 78-81.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could

perform jobs available in the national economy, including addresser, document preparer, and pari-mutuel ticket checker. (R. at 79.)

### III.  MEDICAL RECORDS

**A.  Riverside Methodist Hospital**

On March 5, 2013, Plaintiff was admitted to Riverside Methodist Hospital with congestive heart failure. (R. at 254-331.) A transthoracic echocardiogram performed March 6, 2013, showed evidence of dilated cardiomyopathy, moderate dilation of the left ventricular chamber size, and severely decreased left ventricular systolic function with an estimated global ejection fraction of less than twenty percent. (R. at 265-266, 318-320.) The left ventricular internal dimension diastolic (LVIDd) was measured at 6.37 cm. (R. at 319.) A subsequent echocardiogram performed on March 11, 2013, showed an estimated global ejection fraction of between twenty and twenty-five percent. (R. at 321-322.)

On April 5, 2013, Plaintiff was again admitted to Riverside Methodist Hospital due to cardiac concerns relating to tachycardia and increased edema. (R. at 334-453.) An echocardiogram performed April 6, 2013, showed an estimated ejection fraction of twenty-twenty five percent and an LVIDd of 6.48 cm. (R. at 426-427.) A heart catheterization was performed on April 10, 2013, showing an ejection fraction of less than fifteen percent. (R. at 473.) The catheterization findings also documented complete occlusion in the right coronary artery, left anterior descending, and ramus intermedius, with intact collateral flow. (*Id*.) Plaintiff's doctors determined he was not a candidate for coronary artery bypass grafting. (R. at 352, 383-388.) Another echocardiogram was conducted on April 11, 2013, showing an ejection fraction of less than twenty percent and a LVIDd of 6.3 cm. (R. at 428-430.) The same day,

during this hospitalization, Plaintiff went into cardiac arrest and required resuscitation. (R. at 352-356.) Plaintiff was discharged from the hospital on April 19, 2013. (R. at 466-471.)

On June 6, 2013, Plaintiff returned for a follow-up appointment and reported that he was doing much better. (R. at 474.) Plaintiff cancelled his PET scan for myocardial viability and indicated he would not agree to bypass surgery if indicated by testing, to an implantable cardioverter defibrillator, or to continue to wear his life vest in spite of the risk that might exist. (R. at 474.) On June 26, 2013, Plaintiff met with Sreedhar Billakanty, M.D., to again discuss a defibrillator implant. (R. at 507-511.) Dr. Billakanty indicated that Plaintiff's symptoms were consistent with Functional Class III at that time. (R. at 507.) Plaintiff again declined defibrillator implantation, instead choosing an observation strategy. (*Id.*)

Plaintiff's doctors conducted an echocardiogram on July 3, 2013, showing severely decreased left ventricular systolic function, an estimated ejection fraction of twenty-five to thirty percent, and an LVIDd of 6.16 cm. (R. at 530-532.) Plaintiff was seen in the cardiology clinic again on March 27, 2014. (R. at 628-634.) Dr. Billakanty observed that Plaintiff "has done remarkably well in recovering." (R. at 628.) Dr. Billakanty characterized Plaintiff as "very active without any signs of shortness of breath, chest pain, pressure or heaviness." (*Id.*) Dr. Billakanty found that Plaintiff had an ejection fraction of thirty-five percent or less. (R. at 628.)

**B. John A. Cocumelli, DO**

On February 21, 2014, Plaintiff met with his primary care provider, John A. Cocumelli, DO. Dr. Cocumelli reported "good compliance with treatment, good tolerance of treatment and good symptom control." (R. at 615.) Dr. Cocumelli also reported no "headache, dizziness or shortness of breath . . . chest pain, claudication, weakness or edema." (*Id.*) Dr. Cocumelli also reported no fatigue and no anxiety. (*Id.*)

5

Plaintiff again saw Dr. Cocumelli on August 20, 2014. Dr. Cocumelli reported "good compliance with treatment, good tolerance of treatment and good symptom control." (R. at 617.) Dr. Cocumelli also reported edema, but no fatigue, weakness, chest pain, palpitations, or shortness of breath. (*Id*.) Plaintiff saw Dr. Cocumelli again on January 1, 2015. Dr. Cocumelli Cocumelli reported "good compliance with treatment, good tolerance of treatment and good symptom control." (R. at 619.) Dr. Cocumelli also reported edema, but no fatigue, weakness, chest pain, palpitations, or shortness of breath. (*Id*.) Plaintiff saw Dr. Cocumelli once again on June 30, 2015. Dr. Cocumelli Cocumelli reported "good compliance with treatment, good tolerance of treatment and good symptom control." (R. at 622.) Dr. Cocumelli also reported edema, but no fatigue, weakness, chest pain, palpitations, or shortness of breath. (*Id*.)

**C. Sudhir Dubey, PsyD.**

On July 30, 2013, Plaintiff saw Sudhir Dubey, PsyD., for a disability assessment. Plaintiff reported to Dr. Dubey that he interacts with his friends, who provide "emotional support and socialization." (R. at 519.) Plaintiff reported "some feelings of 'anxiety.'" (*Id*.) Plaintiff reported "good and professional" interactions with past co-workers and supervisors in a work environment. (R. at 520.) Plaintiff also reported that "he was able to meet the mental requirements of the work circumstance." (*Id*.) Plaintiff further reported that he is able to conduct personal hygiene, shop, manage money, take prescribed medications, keep a daily schedule, keep appointments, drive, and do daily paperwork on his own. (R. at 521.) Plaintiff stated that he leaves home to shop and run errands approximately once per week. (*Id*.)

**H. State Agency Review**

On July 26, 2013, non-treating state agency medical consultant Gary Hinzman, M.D., reviewed Plaintiff's record for the state agency pursuant to his application for benefits. Dr.

6

Hinzman noted that he considered Listing 4.04 Ischemic Heart Disease, and found that Plaintiff did not meet the requirements of the listing. (R. at 119-124.)

Upon reconsideration on January 14, 2014, non-treating state agency medical consultant Eli Perencevich, D.O., also reviewed Plaintiff's records. Dr. Perencevich noted that he considered Listing 4.04 Ischemic Heart Disease, and found that Plaintiff did not meet the requirements of the listing. (R. at 130-138.)

### IV. THE ADMINISTRATIVE DECISION

On November 23, 2015, the ALJ issued her decision. (R. at 16-34.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 22, 2013, the application date. (R. at 21.) The ALJ found that Plaintiff has the following severe impairments: coronary artery disease with a history of cardiac arrest, cardiomyopathy secondary to viral infection; hypertension, affective disorder, and anxiety disorder. (*Id*.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

Part 404, Subpart P, Appendix 1. (R. at 21-25.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [C]laimant has the residual functional capacity for lifting or carrying no more than 10 pounds occasionally and 5 pounds frequently; standing or walking about 2 hours in an 8-hour workday; sitting up to 6 hours in an 8-hour workday. Claimant is limited to no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; and frequent balancing, stooping, crouching, and crawling. He should avoid all exposure to hazards including use of moving machinery and unprotected heights. He is precluded from commercial driving. Mentally the claimant is capable of only simple, routine and repetitive tasks with only occasional changes in the work setting with the changes explained.

(R. at 25.)

The ALJ determined that Plaintiff is unable to perform his past work as a repossessor. (R. at 32.) Relying on the VE's testimony, the ALJ determined that Plaintiff could perform at least three jobs that exist in the local and national economy: addresser, document preparer, and pari-mutuel ticket checker. (R. at 33-34.) She, therefore, concluded that Plaintiff was not disabled under the Social Security Act since August 22, 2013, the application date. (R. at 34.)

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

8

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his sole contention of error, Plaintiff argues that the ALJ erred in finding that he does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff states that he meets the criteria of Listing 4.02, Chronic Heart Failure and that the ALJ erred in not considering the listing. (ECF No. 10 at 10-13.) Defendant counters that Plaintiff is barred from raising the issue on appeal because Plaintiff's counsel briefed and argued at the administrative hearing the listing that Plaintiff believes he meets, Listing 4.04, and not Listing

4.02. (ECF No. 15 at 5-6.) Defendant also argues that Plaintiff failed to provide substantial evidence that would support a finding that Plaintiff's impairments meet the criteria in Listing 4.02. (*Id*. at 6-10.)

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate his impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports his conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

### A. Listing 4.02 Chronic Heart Failure

Plaintiff argues that it was error for the ALJ not to discuss Listing 4.02 in his opinion. According to Plaintiff, his impairments meet the requirements of Listing 4.02, both by the stated criteria and by the medical equivalence of his ischemic heart disease and three vessel occlusion considered in combination. (ECF No. 10 at 10-15.) Plaintiff posits that the ALJ failed to consider both the Listing and these impairments in combination, leading to reversible error. (ECF No. 15 at 7.)

When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" SSR 96-8p, 1996 WL 374184, at *5. An ALJ's cursory reference to the combined effect of a plaintiff's impairments is insufficient. *Blankenship v. Bowen*, 874 F.2d 1116, 1123–24 (6th Cir. 1989). However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet

the listings." *Loy v. Sec'y of Health & Human Serv.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Serv.,* 833 F.2d 589, 592 (6th Cir. 1987)).

Plaintiff argues the ALJ should have indicated whether the combination of impairments fit within the parameters of 4.02 of the Medical Listings, chronic heart failure. Plaintiff's attorney, however, did not argue this point at the hearing, despite both briefing and arguing Listing 4.04, ischemic heart disease. (R. at 46, 248.)

A claimant represented by counsel is presumed to have presented his best case. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing *Sears v. Sec'y of Health & Human Servs.*, 840 F.2d 394, 402 (7th Cir. 1988)). When a claimant is represented by counsel at the administrative hearing, the ALJ is not required to discuss listings not argued by counsel. *Malone v. Comm'r of Soc. Sec.*, No. 1:10-CV-837, 2011 WL 5506288, at * 5 (N.D. Ohio March 28, 2011). It was, therefore, "entirely reasonable" for the ALJ to not explicitly mention Listing 4.02. (*Id.*) The ALJ thoroughly discussed the medical evidence and Plaintiff's individual impairments both at Step Three and in determining Plaintiff's RFC. (R. at 21-32.) The ALJ also "specifically refer[red]" to a "combination of impairments" in finding that Plaintiff did not meet the listings. (R. at 21; *Loy*, 901 F.2d at 1310.) A review of the ALJ's opinion reveals that she considered both Plaintiff's ischemic heart disease and his multi-vessel coronary artery disease. (R. at 21-32.) The Undersigned finds, therefore, that the ALJ sufficiently considered both the Listings and Plaintiff's combination of impairments at Step Three.

## B. Harmless Error

Even had the ALJ erred in his discussion of the Listings at Step Three, Plaintiff has failed to provide substantial evidence that would support a finding that he meets the criteria in Listing 4.02. In order to meet Listing 4.02, Plaintiff is required to demonstrate that he has chronic heart

11

failure leading to systolic or diastolic failure within certain parameters while on a regimen of prescribed treatment. 20 C.F.R. 404, Subpt. P, App. 1, Listing 4.02(A). Plaintiff must then also meet one of the following criteria from 20 C.F.R. 404, Subpt. P, App. 1, Listing 4.02(B):

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less.

C.F.R. 404, Subpt. P, App. 1, Listing 4.02(B).

Defendant acknowledges that Plaintiff satisfies the requirements of Section A, but disputes Plaintiff's assertion that he has presented evidence sufficient to satisfy any of the Section B criteria.[2] (ECF No. 15 at 6-9.) Plaintiff has provided no evidence with respect to B criteria two and three. Plaintiff does argue, though, that his symptoms of heart failure "limit the ability to independently initiate, sustain or complete activities of daily living," as required by B criterion one. (ECF No. 10 at 11.)

---

[2] Plaintiff argues that additional medical expert opinion evidence is required because the reviewing state agency medical consultants did not consider Listing 4.02 and because they allegedly erred in their statement of Plaintiff's ejection fraction. (ECF No. 10 at 12.) As noted above, although Plaintiff's counsel failed to raise Listing 4.02, the ALJ nevertheless sufficiently considered all of Plaintiff's impairments at Step Three. Because any error evaluating Plaintiff's medical records relates only to the Section A criteria, which Defendant now concedes, Plaintiff's argument in this respect is moot.

In his opinion, the ALJ specifically found that, "[i]n the activities of daily living, the claimant has mild restriction." (R. at 23.) The ALJ then discussed at length the substantial evidence of record supporting his finding. (*Id*.) On July 30, 2013, Plaintiff self-reported to Dr. Dubey that he is able to conduct personal hygiene, shop, manage money, take prescribed medications, keep a daily schedule, keep appointment, drive, and do daily paperwork on his own. (R. at 521.) Plaintiff also reported that he leaves home to shop and run errands approximately once per week. (*Id*.) On March 27, 2014, Dr. Billakanty stated that Plaintiff "has done remarkably well in recovering" and characterized Plaintiff as "very active without any signs of shortness of breath, chest pain, pressure or heaviness." (R. at 628.) Between February 2014 and June 30, 2015, Plaintiff's primary care physician, Dr. Cocumelli repeatedly found "good" control of Plaintiff's symptoms. (R. at 615, 617, 619, 622.)

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff has only mild restriction of his activities of daily living. The Undersigned finds, therefore, that Plaintiff did not demonstrate that his symptoms "very seriously" limit his ability to independently initiate, sustain or complete daily living, as required by the Listing. C.F.R. 404, Subpt. P, App. 1, Listing 4.02(B). As a result, any error in the ALJ's determination at Step Three is harmless.

## VII. CONCLUSION

In conclusion, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## IX. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 15, 2018                     /s/ *Elizabeth A. Preston Deavers*
                                            ELIZABETH A. PRESTON DEAVERS
                                            UNITED STATES MAGISTRATE JUDGE